# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:21-cr-584 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| LAMUEL FLOWERS, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

On August 11, 2021, an indictment issued charging sixteen individuals with participation in a criminal organization known as "Shorb Blocc" and located principally in the area of Northwest Canton, Ohio. (Doc. No. 1 (Indictment).) According to the indictment, members and associates of Shorb Blocc "engaged in drug distribution, and acts of violence involving murder, assault, robbery, and witness intimidation[.]" (*Id.* ¶ 1.) All defendants are charged with conspiracy to violate the Racketeer Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(d). Various defendants are also charged with one or more counts of the following: being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); possession with intent to distribute a controlled substance, as well as distribution of a controlled substance, both in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and possession of firearms in furtherance of a drug trafficking crime, under 18 U.S.C. § 924(c)(1)(A)(i).

Defendants have filed a series of pretrial motions, and the government has filed responses. The Court finds that these motions may be resolved on the briefing without a hearing. The trial in this matter is currently set for July 11, 2022.

## I. MOTIONS TO JOIN

Several defendants have filed motions to join in the pretrial motions filed by defendant Lamuel Flowers ("Flowers"). These motions include: motion of defendant Corey Sullivan ("Sullivan") to join (Doc. No. 231), motion of Jessie Lee ("Lee") to join (Doc. No. 232), and motion of defendant Tyvion Hall ("Hall") to join (Doc. No. 234). These motions to join are GRANTED, and any rulings on the pretrial motions filed by Flowers will also, where appropriate, be applicable to defendants Sullivan, Lee, and Hall.

## II. DISCOVERY MOTIONS

### A. Motion for Disclosure of Rule 404(b) Evidence (Doc. No. 208)

Flowers requests that the government provide written notice of any and all other crimes, wrongs, or acts covered by Rule 404(b) of the Federal Rules of Evidence that it intends to introduce in its case-in-chief or in any reasonably foreseeable rebuttal. (Doc. No. 208.) It is well-settled that, "[u]nder Rule 404(b), when the defendant requests notification of the government's intent to introduce other-act evidence, the government must provide such notice in a reasonable form and manner." *United States v. Gonzalez*, 501 F.3d 630, 637 (6th Cir. 2007). The rule does not specifically define "reasonable" although it does state that the notice should be before trial, unless "good cause[] excuses lack of pretrial notice." Fed. R. Evid. 404(b)(3)(C).

Flowers insists that early notice of Rule 404(b) evidence, well in advance of trial, is necessary to allow counsel to adequately prepare effective cross-examination of government witnesses and properly advise him on the advisability of going to trial and/or what defense to

present "in the face of possibly devastating evidence of uncharged misconduct." (*Id.* at 4.[1]) He also requests notice sufficiently in advance of trial to afford counsel an adequate opportunity to litigate the admissibility of such other acts. (*Id.* at 5.) In his motion, he requested written notice of any Rule 404(b) by April 18, 2022, which at the time the motion was filed, represented a date three months before trial.[2] (*Id.* at 6.)

The government responds by advising that, at this time, it does not intend to offer evidence that fits under Rule 404(b), electing to limit its evidence to those acts identified in the indictment and other such acts that either represent background evidence or evidence that is otherwise intrinsic to the criminal activity charged in the indictment. (Doc. No. 249 at 2.) *See United States v. Wardle*, 842 F. App'x 993, 996 (6th Cir. 2021) (Background evidence, which is evidence of "acts that have a causal, temporal or spatial connection with the charged offense," does not fall under Rule 404(b).) (quotation marks and citation omitted); *see also United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (Res gestae, or background evidence, "consists of those acts that are inextricably intertwined with the charged offense or those other acts, the telling of which is necessary to complete the story of the charged offense.")

The government also takes issue with Flowers' belief that he requires notice of any such qualifying Rule 404(b) evidence three months in advance of trial. It requests that the Court order it to provide notice of any potentially qualifying Rule 404(b) evidence no more than three weeks prior to trial. (Doc. No. 249 at 4.) It further requests that the Court take into consideration the

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic docketing system.

[2] This date has since passed due to the fact that defendants and the government requested and were afforded multiple extensions of time in which to file pretrial motions and responses thereto. Accordingly, the Court, with the agreement of the parties, has extended the dates and deadlines in this case. (*See* Doc. Nos. 273 and 274.)

fact that this case is evolving in nature and that it might not be possible to provide notice as to all qualifying evidence in advance of trial. (*Id.*)

Courts have held that time periods less than one month, and often no more than one week, prior to trial fall within the realm of what constitutes "reasonable notice" under Rule 404(b). *See, e.g., United States v. Paul*, 57 F. App'x 597, 607 (6th Cir. 2003) (notice of intent to use Rule 404(b) evidence one week before trial reasonable); *United States v. French*, 974 F.2d 687, 694 (6th Cir. 1992) (trial court did not abuse its discretion in allowing the United States to disclose 404(b) evidence seven days before trial); *United States v. Pelini*, 896 F. Supp. 795, 797 (N.D. Ill. 1995) ("Regarding Rule 404(b), the government has agreed to provide said notice three weeks before trial, which satisfies the Rule 404(b) reasonableness requirement.")

While the Court believes that Flowers' requested time-frame of three months is both unnecessary and infeasible, the Court finds that the complexity of the case requires advance notice at least four weeks prior to trial. Such an allowance will afford defense counsel adequate time to investigate any identified Rule 404(b) acts, as well as to engage in any necessary motion practice relative to these acts. Accordingly, Flowers' motion is GRANTED IN PART, and the government is directed to provide formal notice of its intent to introduce any potentially qualifying Rule 404(b) evidence no later than four weeks prior to trial. Further, the government will be required to demonstrate good cause before offering any Rule 404(b) evidence that was not disclosed during that time period.

### B.  Motion for Additional Peremptory Challenges (Doc. No. 209)

Flowers has also filed a motion seeking additional peremptory challenges. He requests that he be permitted to exercise 20 challenges jointly with other defendants, and that the

government be allowed a total of 12 challenges. (Doc. No. 209 at 2.) The government believes that the number of challenges permitted by rule is sufficient, but requests that any additional allotment to defendants be followed by an increase to the government in a manner that preserves the ratio set forth in Rule 24(b)(2) of the Federal Rules of Criminal Procedure. (Doc. No. 247 at 2.)

Rule 24(b) provides that in non-capital felony cases, "the government has 6 peremptory challenges and the defendant or defendants jointly have 10 peremptory challenges when the defendant is charged with a crime punishable by imprisonment of more than one year." Fed. R. Crim. P. 24(b)(2). The rule further provides that "[t]he court may allow additional peremptory challenges to multiple defendants, and may allow the defendants to exercise those challenges separately or jointly." Fed. R. Crim. P. 24(b). A district court's decision regarding peremptory challenges is reviewed for abuse of discretion and will be upheld so long as it "[c]omplies with the minimum requirements of Rule 24[.]" *United States v. Gibbs*, 182 F.3d 408, 435 (6th Cir. 1999) (collecting cases).

If this case goes to trial in its present posture, the Court is inclined to grant Flowers' request to increase the number of peremptory challenges for defendants while at the same time proportionately increasing the number of government peremptory challenges. But the trial in this case is still months away, and the Court has no way of knowing which defendants may go to trial and on what counts.[3] Accordingly, a ruling on this motion is DENIED as premature. Said denial is WITHOUT PREJUDICE to raising the issue again at the final pretrial hearing.

---

[3] As of the date of this memorandum opinion, at least three defendants have filed notices of intent to enter guilty pleas, and/or have already entered guilty pleas. (*See* Doc. Nos. 235, 236, 239.)

### C.        Motion for Disclosure of All Grand Jury Testimony (Doc. No. 210)

Flowers moves for the production of transcripts of all grand jury testimony. (Doc. No. 210.) Citing the "breadth of the allegation[s] contained in the [i]ndictment, the 10 years it encompasses, the sheer volume [of] discovery and the innumerable number of witnesses that undoubtedly testified in front of the Grand Jury[,]" Flowers insists that "th[is] is a case in which there exists a 'particularized need' for the pretrial disclosure of grand jury testimony." (*Id*. at 3.) He requests that the government produce these transcripts three months prior to trial. (*Id*. at 4.) The government opposes the request in its entirety. (*See* Doc. No. 248.)

A party seeking disclosure of grand jury material under Rule 6(e) of the Federal Rules of Criminal Procedure must demonstrate a particularized need. *See Douglas Oil Co. v. Petrol Stops NW*, 441 U.S. 221, 222, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979). To meet the particularized need standard, a party must establish that: (1) the material sought is necessary to avoid a possible injustice in another judicial proceeding; (2) the need for disclosure outweighs the need for continued secrecy; and (3) the request is structured narrowly to cover only the material needed. *See id*. at 223; *In re Antitrust Grand Jury*, 805 F.2d 155, 161 (6th Cir. 1986) (same). "It is clear that [the] burden [of demonstrating the need for disclosure] is a heavy one to overcome." *Lucas v. Turner*, 725 F.2d 1095, 1101 (7th Cir. 1984); *see FDIC v. Ernst & Whinney*, 921 F.2d 83, 87 (6th Cir. 1990) (similar).

Flowers' only justification for his request to receive the entirety of the grand jury testimony in this case is the number of allegations in the indictment, the volume of discovery, and the innumerable witnesses he surmises testified before the grand jury. But Flowers' justification is woefully short of meeting the heavy burden of showing particularized need. "It

6

has long been recognized that grand juries require a generous zone of secrecy in order to perform their investigative functions." *United States v. Rutherford*, 509 F.3d 791, 795 (6th Cir. 2007) (citation omitted). Flowers has failed to show that his need for disclosure is greater than the need for secrecy over such proceedings, nor has he attempted to limit his request for disclosure to only that which is truly necessary. *See in re Antitrust Grand Jury*, 805 F.2d at 160–61 ("A party requesting grand jury information must show the need 'with particularity' so that 'the secrecy of the proceedings [may] be lifted discreetly and limitedly."); *see, e.g., United States v. Fraizer*, No. 3:17-cr-130, 2019 WL 4242412, at *22–23 (M.D. Tenn. Sept. 6, 2019) (finding motion seeking grand jury testimony based on the complexity of the case insufficient to show particularized need, noting that the interests served by preserving the secrecy of grand jury proceedings "are no less important in the big case than the small").

The motion seeking general disclosure of all grand jury testimony is DENIED.

### D.    Motion for Daily Transcripts (Doc. No. 211)

Flowers further requests that he receive daily transcripts of the trial. Citing the projected length of trial (which the parties estimate to be six weeks) and the number of anticipated witnesses, Flowers suggests that "it would be virtually impossible to keep track of and prepare for effective cross-examination of the witnesses without transcripts of their testimony." (Doc. No. 211 at 1.) The government defers to the Court's discretion, though it states that it "believes the need for daily transcripts is speculative and other devices, such as note taking, would function the same[.]" (Doc. No. 246 at 2.)

"[T]he decision to supply daily transcripts to indigent defendants is a matter within the discretion of the trial judge." *United States v. Bari*, 750 F.2d 1169, 1181 (2d Cir. 1984). Indeed,

while the Guide to Judiciary Policies and Procedures states that "[t]he furnishing of accelerated transcript services in criminal proceedings should be discouraged," it also "recogniz[es] that there are some circumstances in which such transcript services are necessary and required by either the prosecution or the defense." *Guide to Judiciary Policies and Procedures*, Vol. 7, CH. 3, § 32030.20.

In support of his motion, Flowers cites the decision in *Britt v. North Carolina*, 404 U.S. 226, 92 S. Ct. 431, 30 L. Ed. 2d 400 (1971). Though not addressing daily trial transcripts, the Supreme Court in *Britt* did recognize that the government, "as a matter of equal protection, must provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Id*. at 227. The Court also observed that "[w]hile the outer limits of that principle are not clear," it "has identified two factors that are relevant to the determination of need: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." *Id*.

If this case proceeds to trial in the fashion currently anticipated by counsel—over  several weeks with multiple defendants, numerous witnesses, and voluminous exhibits—the Court suspects that it would be of value if real-time transcripts were made available to the defense. And while counsel and the parties will undoubtably take notes of the proceedings, in a complex trial such as this, notes may be insufficient. Determination of this issue cannot, however, be made this far in advance of trial, as it is unknown what the case complexion will be at trial time. Accordingly, a ruling on this motion is DENIED as premature. Said denial is WITHOUT PREJUDICE to raising the issue again at the final pretrial hearing.

**E.      Motion for a Bill of Particulars (Doc. No. 213)**

Flowers seeks particularity with respect to Count One of the indictment charging conspiracy to commit racketeering under 18 U.S.C. § 1962(d). (Doc. No. 213; *see* Doc. No. 1 ¶¶ 1–101.) Noting that Count One charges 91 overt acts over a 10-year period from 2011 to 2021, he suggests that simply listing all of the overt acts that allegedly occurred during this decade long conspiracy is insufficient to permit him to understand "how the Government views his participation in the alleged conspiracy." (Doc. No. 213 at 4.) Though it is unclear from the motion, it appears that Flowers is requesting particularity as to the date of certain charged overt acts.

The government opposes the motion. (Doc. No. 245.) It notes that the indictment already provides particularity as to the date and location of the vast majority of the overt acts listed in Count One. (*Id.* at 2–4 (citing examples from indictment).) Indeed, the government underscores that the indictment supplies a comprehensive summary of this charged conspiracy, broken down between two sections: the "manner and means of the conspiracy" and the "acts in furtherance of the conspiracy." The former supplies a broad category of the roles held by the co-conspirators, while the latter provides a more specific breakdown of many of the acts undertaken by these same individuals. Given the level of detail already existing in the indictment, the government maintains that no further particularity is required. (*Id.* at 5–6.)

Rule 7(f) provides for the filing of a bill of particulars "'to minimize surprise and assist [the] defendant in obtaining information needed to prepare a defense and to preclude a second prosecution for the same crimes.'" *United States v. Crayton,* 357 F.3d 560, 568 (6th Cir. 2004) (quoting *United States v. Salisbury,* 983 F.2d 1369, 1375 (6th Cir. 1993)). "Thus, the test in

ruling on a motion for a bill of particulars is whether providing such details is necessary to the preparation of the defense and avoidance of prejudicial surprise." *United States v. Musick,* 291 F. App'x 706, 724 (6th Cir. 2008) (citing FEDERAL PRACTICE & PROCEDURE § 129); s*ee United States v. Matos–Peralta,* 691 F. Supp. 780, 791 (S.D.N.Y. 1988) ( "The ultimate test must be whether the information sought is necessary, not whether it is helpful.")

"A bill of particulars 'is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial[,]" *Crayton,* 357 F.3d at 568 (quoting *Salisbury,* 983 F.2d at 1375), nor may a defendant use a bill of particulars to discover the government's legal theory of the case. *United States v. Gabriel,* 715 F.2d 1447, 1449 (10th Cir. 1983); *United States v. Marks,* 364 F. Supp. 1022, 1030 (E.D. Ky. 1973), *aff'd,* 520 F.2d 913 (6th Cir. 1975), *rev'd on other grounds,* 430 U.S. 188, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977). The level of detail in the indictment can be a basis for denying the motion for a bill of particulars, *see Salisbury*, 983 F.2d at 1375, and "a defendant is not entitled to a bill of particulars with respect to information which is available through other sources." *United States v. Paulino,* 935 F.2d 739, 750 (6th Cir. 1991), *suspended on other grounds by statute*, *United States v. Caselorente,* 220 F.3d 727 (6th Cir. 2000). Further, the decision to require a bill of particulars is left to the discretion of the trial court. *See Musick,* 291 F. App'x at 724; *United States v. Perkins,* 994 F.2d 1184, 1190 (6th Cir. 1993).

In this case, the lengthy description of Count One in the indictment provides a detailed narrative of the involvement of each participant in the charged RICO conspiracy, supplying dates, locations, and other specifics as to most of the overt acts. (*See* Doc. No. 1 ¶¶ 10–101.) By way of example, paragraph 13 provides that:

> On or about April 15, 2021, during an altercation with the 14th Street gang, LAMUEL FLOWERS possessed a firearm and D.W. (a Shorb Blocc gang member) discharged a firearm in the area of the Northeast Community Center, 25th Street NE, Canton, Ohio.

(*Id.* ¶ 13.)

Notwithstanding a similar level of detail contained in the majority of the paragraphs describing the identified overt acts, Flowers complains that a limited number of paragraphs only identify the alleged act and indicate that the act occurred during the time-period of the RICO conspiracy. He highlights three paragraphs—paragraphs 90, 97, and 99—in support. (Doc. No. 213 at 4.) Paragraph 90 describes a collage that was purportedly dedicated to Shorb Blocc members and contained photographs of numerous suspected gang members including Flowers. (Doc. No. 1 ¶ 90.) Paragraph 97 describes a photograph of Flowers and another Shorb Blocc member, J.H, posing "while displaying Shorb Blocc hand signs." (*Id.* ¶ 97.) Paragraph 99 identifies seven individuals, including Flowers, who had tattoos that supported or promoted Shorb Blocc gang membership. (*Id.* ¶ 99.) While precise dates are not supplied, these paragraphs contain other details describing these events.

Flowers fails to explain how these paragraphs, which describe photographs or events involving Flowers and other identified individuals, are insufficiently particularized such that he cannot adequately prepare his defense of the charged offense. Moreover, he fails to explain how knowing the precise date he posed for a certain photograph using gang signs, or the date gang-related tattoos were acquired by himself or other gang members, is necessary for him to understand the government's view of his participation in the conspiracy. Indeed, Flowers is not even entitled to have each and every overt act set forth in the indictment, let alone a detailed account of the precise date, location, and description of each event. *See Salisbury*, 983 F.2d at

1375 ("[A] defendant is not entitled to discover all the overt acts that might be proven at trial.");

*Musick*, 291 F. App'x at 724 ("[A] defendant is not entitled to a bill of particulars if the purpose of the bill is to obtain a list of the Government's witnesses or to discover all of the overt acts that might be proven at trial.") As such, it seems apparent that Flowers is merely seeking evidentiary materials, which is not a proper use of a bill. *See, e.g., United States v. Ridley*, 199 F. Supp. 2d 704, 708 (S.D. Ohio 2001) (request for detailed information was really an improper request for complete discovery of evidentiary materials). Because the additional information Flowers seeks is not necessary to prepare a defense or avoid surprise, the motion is DENIED.

### F.     Motion for Early Disclosure of Witness/Exhibit Lists (Doc. No. 221)

Flowers seeks an order requiring the government to produce its witness and exhibit lists at least 2 months prior to trial. (Doc. No. 221 at 1.) The Court's standing trial order requires the parties to submit their witness and exhibit lists seven days prior to trial. (*See* Doc. No. 169 (Amended Trial Order) at 4.) Citing the voluminous nature of discovery, the anticipated number of witnesses and exhibits, and the significant penalties Flowers and his co-defendants face, Flowers believes that "seven days is insufficient notice for the defense to attempt to locate and interview the Government witnesses and review its thousands of exhibits." (Doc. No. 221 at 3.) The government opposes the motion, citing concern for the safety of witnesses and victims, as well as concern that early identification of potential witnesses may result in witness intimidation, and further arguing that there is no basis in law for such a request. (*See generally* Doc. No. 243.)

As a general rule, the government is not required to disclose the names of its witnesses before trial. *See United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993); *see also United States v. Turner*, 91 F. App'x 489, 491 (6th Cir. 2004) (holding that a "defendant in a non-capital

case . . . is not entitled to know in advance of trial who will testify for the government"). Nevertheless, as Flowers notes, the Court has discretion to order the government to produce discovery not required by Fed. R. Crim. P. 16, including a witness or exhibit list, pursuant to its inherent powers. *United States v. Kendricks*, 623 F.2d 1165, 1186 (6th Cir. 1980) (holding that the district court has the discretion to order the prosecution to produce a witness list); *see also United States v. Presser*, 844 F.2d 1275, 1281 n.12 (6th Cir. 1988) (recognizing that "a trial court may have some inherent power to enter specific orders compelling the disclosure of specific evidence when justice requires it"); *United States v. Powell*, No. 12-20246, 2012 WL 6096600, at *6 (E.D. Mich. Dec. 7, 2012) (observing that the district court has discretion to order the government to produce a witness list). In ruling on such motions, courts consider whether disclosure would expedite trial and facilitate docket control or cause security issues, as well the amount of time afforded the defendant to research potential witnesses and prepare for trial, and whether the government previously turned over the identity of its witnesses. *Powell*, 2012 WL 6096600, at *6 (citing cases).

The Court finds that the factors identified by *Powell* and the cases cited therein weigh against disclosure. First, while early disclosure of witnesses and exhibit may serve to expedite the trial, the Court has already encouraged the government, in its trial order, to disclose Jencks Act material as early as possible and, if possible, in advance of trial. In fact, the government advises that it has already provided numerous Jencks Act statements in discovery, and that those Jencks Act statements that have been withheld involved the statements of confidential informants, witnesses, and victims, whose safety the government believes to be at risk. (Doc. No. 242 at 2–3.)

As for the second factor, the Court finds the potential for witness intimidation and/or safety weighs against disclosure of a witness list. The indictment charges a large-scale drug trafficking conspiracy in which co-conspirators are charged with advancing the goals of the criminal enterprise by means of acts of violence, often involving the use of firearms. The Court agrees with the government that early disclosure of the identity of certain witnesses risks the possibility of threats, intimidation, physical harm to confidential informants, and the risk that witnesses no longer be willing to testify.

The other enumerated factors also weigh against the provision of a witness or exhibit list. The government provided defendants with discovery in December 2021, so that defendants and their counsel will have had discovery approximately 12 months prior to trial. This discovery was organized by the overt acts identified in the indictment and also included investigative reports summarizing the statements and reports of law enforcement. (Doc. No. 243 at 3.) By providing discovery in this fashion, the government was able to make the arguably voluminous discovery more accessible and easier to digest. Again, the Court reiterates that the government has already produced some Jencks Act material, and it will (as set forth below) encourage the government to provide the remaining Jencks Act statements as early as practicable in order to avoid unnecessary delays at trial.

For all of these reasons, the Court concludes that the relevant factors do not favor early disclosure of witnesses. Additionally, as set forth in its trial order, the Court requires counsel to exchange exhibits 7 days before trial so as to reduce surprise and with a view toward stipulating to the admissibility of as many exhibits as possible.  (*See* Doc. No. 169 at 5.) Given that defense counsel have had most of the discovery in this case for more than 7 months, and should already

be familiar with much of the evidence that will comprise the government's case-in-chief, the Court finds that no additional time is necessary. Accordingly, Flowers' motion for the Court to order the government to disclose a witness and exhibit list two months prior to trial is DENIED.

### G.    Motion for Early Jencks Act Material (Doc. No. 222)

For many of the same reason he seeks witness and exhibit lists, Flowers requests early Jencks Act material. (Doc. No. 222 at 3.) Specifically, Flowers represented that, given the nature and complexity of the case, it is essential that he receive any and all Jencks Act material at least three months prior to trial. (*Id*. at 3, 6.) The government opposes the motion. (*See* Doc. No. 242.) While noting that it has already produced certain witness statements, the government underscores that the statements of confidential informants and alleged victims have not been provided due to safety concerns. In particular, the government observes:

> The allegations in this case involve numerous violent acts including shootings and murder. Defendant Flowers specifically has been accused of involvement where he was incarcerated and encouraged another Shorb Blocc gang member to shoot at members of an opposing gang. Further, Northeast Ohio Corrections Center has recently confiscated a cellular phone from Defendant Flowers as he was discovered communicating unmonitored over social media. Based on the allegations in the indictment and the discovery of an illicit cellular phone in the possession of Defendant Flowers, this raises the level of concern for the safety of witnesses and victims in this case.

(*Id*. at 3 n.1.)

Under Rule 26.2, which incorporates the Jencks Act in the Federal Rules of Criminal Procedure, after a witness has testified on direct examination, the government or the defendant may discover the witness' pretrial statements if the statements are in the possession of the party calling the witness and relate to the subject matter of the witness' testimony. *See also* 18 U.S.C. § 3500. While it is true that early disclosure of Jencks material "avoids the inevitable delay of the

trial when the material is withheld until the witness concludes his direct examination[,]" *United States v. Minksy*, 963 F.2d 870, 876 (6th Cir. 1992), the government has the right under the Jencks Act to withhold such material until the witness has testified on direct. *See id.; United States v. Brazil*, 395 F. App'x 205, 215 (6th Cir. 2010); 18 U.S.C. § 3500(b); *see also United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988) ("The clear and consistent rule of this circuit is that the intent of Congress expressed in the Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial.") (citations omitted). As for *Brady,* the government is only required to provide exculpatory and impeachment evidence in time for effective use at trial. *See United States v. Crayton*, 357 F.3d 560, 569 (6th Cir. 2004) (citation omitted). Further, "[w]hen *Brady* material sought by a defendant is covered by the Jencks Act . . . the terms of that Act govern the timing of the government's disclosure." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (quotation marks and citation omitted).

As set forth in the Trial Order, the government is strongly encouraged to provide all required discovery materials as soon as practicable, provided it can be done without compromising witness security, so as to avoid any unnecessary delays at trial. (Doc. No. 169 at 7.) As it is without authority to do so, however, it will not require the government to provide early Jencks Act statements. Accordingly, Flowers' motion requesting the same is DENIED.

### III. MOTIONS FOR SEVERANCE (DOC. NOS. 203, 207)

Defendant Flowers and defendant DeAngelo Snell ("Snell") both seek permissive severance under Fed. R. Crim. P. 14. Snell also seeks relief under Fed. R. Crim. P. 8(b) for what he perceives as an improper joinder with his co-defendants. (Doc. No. 203 (Snell Severance Motion); Doc. No. 207 (Flowers Severance Motion).) The government opposes each motion for severance. (Doc. No. 220 (Government's Opposition to Snell Severance Motion); Doc. No. 244 (Government's Opposition to Flowers Severance Motion).) Given the considerable overlap in the arguments raised by Flowers and Snell in support of severance, the Court will, where appropriate, discuss the motions together.

Snell argues that he was improperly joined in the present indictment with his co-defendants because he is only alleged to have committed two of the predicate acts that support the RICO conspiracy charged in Count One. (Doc. No. 203 at 2.) Additionally, both defendants complain that a joint trial could result in spillover prejudice. (Doc. No. 203 at 1, 3; Doc. No. 207 at 4–5.)

Rule 8(b) permits "joinder in an indictment of defendants 'alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.'" *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987) (quoting Fed. R. Crim. P. 8(b)). This rule is to be "broadly construed in favor of initial joinder[.]" *Id.* (quotation marks and citation omitted). "A group of acts or transactions is logically interrelated, for instance, if the acts or transactions are part of a common scheme or plan." *United States v. Johnson*, 763 F.2d 773, 776 (6th Cir. 1985). When defendants are joined for participating in the same series of actions, such as in a conspiracy, the defendants may be charged in one or more counts and all defendants

need not be charged in each count. *See United States v. Warner*, 690 F.2d 545, 551 (6th Cir. 1982) ("It is well settled that joinder is proper under Rule 8(b) where an indictment charges multiple defendants with participation in a single conspiracy") (quotation marks and citation omitted). "The predominate consideration is whether joinder would serve the goals of trial economy and convenience; the primary purpose of this kind of joinder is to insure that a given transaction need only be proved once." *Swift*, 809 F.2d at 322 (quotation marks and citation omitted). But where defendants are improperly joined, severance is mandatory. *United States v. Hatcher,* 680 F.2d 438, 441 (6th Cir. 1982).

### A. Improper Joinder

"Rule 8(b) provides substantial leeway to prosecutors who would join racketeering defendants in a single trial. The rule permits joinder of defendants charged with participating in the same racketeering enterprise or conspiracy, even when different defendants are charged with different acts, so long as indictments indicate all the acts charged against each joined defendant (even separately charged substantive counts) are charged as racketeering predicates or as acts undertaken in furtherance of, or in association with, a commonly charged RICO enterprise or conspiracy." *United States v. Elfrasio*, 935 F.2d 553, 567 (3d Cir. 1991); *see United States v. Davis*, 707 F.2d 880, 883 (6th Cir. 1983) ("[W]here two defendants are charged with a RICO conspiracy it is not improper to join such defendants and include the individual illegal actions that constitute the pattern of racketeering alleged."); *United States v. Triumph Capital Grp.*, 260 F. Supp. 2d 432, 438 (D. Conn. 2002) ("In essence, if the RICO charge is valid, an indictment charging substantive crimes alleged as predicate acts along with the RICO claim satisfies the requirements for valid joinder under Rule 8(b)); *see also United States v. Warner*, 690 F.2d 545,

551 (6th Cir. 1982) ("It is well settled that joinder is proper under Rule 8(b) where an indictment charges multiple defendants with participation in a single conspiracy.")

Here, Count One charges all defendants with a RICO conspiracy, in violation of 18 U.S.C. § 1862(d). It identifies the Shorb Blocc, including its membership and associates of which Snell is counted therein, as the "Enterprise." (Doc. No. 1 ¶ 2; *see id*. ¶ 1. ) Paragraph 3 identifies the purposes of the Enterprise, which included "[e]nriching the members and associates . . . through . . . the distribution and sale of controlled substances[.]" (*Id*. ¶ 3(f).) It further identifies 91 overt acts that were alleged to have been undertaken on behalf of the Enterprise, with paragraph 80 providing that, on October 1, 2020, Snell sold cocaine base on behalf of the Enterprise. (*Id*. ¶ 80.) The remaining counts charge various substantive offenses that also constitute some of the overt acts identified in the indictment. Count 22, for example, charges Snell with the underlying substantive offense associated with his alleged sale of cocaine base identified in paragraph 80 of Count One. (*See id*. ¶ 122.) Because the indictment properly charges a RICO conspiracy, with the substantive crimes also forming many of the predicate acts for the conspiracy, it satisfies Rule 8(b). *See Triumph*, 260 F. Supp. 2d at 438; *see, e.g., United States v. Gardiner*, 463 F.3d 445, 457 (6th Cir. 2006); *United States v. Carson*, 455 F.3d 336, 373 (D.C. Cir. 2006) ("The indictment alleged that all of these counts were overt acts in furtherance of the narcotics conspiracy and predicate acts in furtherance of the RICO conspiracy. This provided the necessary link to satisfy Rule 8(b).")

### B. Permissive Severance

Having rejected Snell's improper joinder motion, the Court considers the requests for permissive severance. "In order to prevail on a motion for [permissive] severance, a defendant

must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005) (citing *United States v. Sherlin*, 67 F.3d 1208, 1215 (6th Cir. 1995)).

"As a general rule, persons jointly indicted should be tried together because 'there is almost always common evidence against the joined defendants that allows for the economy of a single trial.'" *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002) (quoting *United States v. Phibbs*, 999 F.2d 1053, 1067 (6th Cir. 1993)); *see Gardiner*, 463 F.3d at 472. "Once defendants have been properly joined under Federal Rule of Criminal Procedure 8(b), a 'strong showing of prejudice' is required to justify severance." *United States v. Hessling*, 845 F.2d 617, 619 (6th Cir. 1988) (quoting *United States v. Reed*, 647 F.2d 678, 689 (6th Cir. 1981)); *see also United States v. Scaife*, 749 F.2d 338, 344 (6th Cir. 1984) (showing of prejudice must be made demonstrating that the jury will be unable to separate and treat distinctively evidence that is relevant to each particular defendant on trial). Severance should be granted "only if there is a serious risk that joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993). "Even where the risk of prejudice is high, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) (quoting *Zafiro*, 506 U.S. at 593).

Moreover, "[t]he fact that defendant may have a better chance at acquittal if his trial were severed does not require the judge to grant his motion [to sever]: the defendant must show 'substantial,' 'undue' or 'compelling prejudice.'" *United States v. DeFranco*, 30 F.3d 664, 669–

20

70 (6th Cir. 1994) (quoting *Warner*, 971 F.2d 1195); *see Stanford v. Parker*, 266 F.3d 442, 458 (6th Cir. 2001)). Nor does he have a right to a severance merely because his defense is antagonistic to that of his co-defendants. *Zafiro*, 506 U.S. at 538; *Stanford*, 266 F.3d at 458. Likewise, a spillover of evidence from one defendant to another generally does not require severance. *Anderson*, 89 F.3d at 1312; *see Lopez*, 309 F.3d at 971. In fact, "a defendant is not entitled to severance simply because the evidence against a codefendant is far more damaging than the evidence against him." *United States v. Causey*, 834 F.2d 1277, 1288 (6th Cir. 1987); *see Driver*, 535 F.3d at 427.

As an initial matter, Snell posits that permissive severance is warranted because "very little of the Government's case would be admissible against him in an individual trial." (Doc. No. 203 at 3.) Raising similar concerns, Flowers complains that he is not even charged in Counts Two through Twenty-Five of the indictment. (Doc. No. 207 at 4.) Both defendants forget, however, that they are charged in a RICO conspiracy wherein the overt acts, including those that are also charged as separate substantive crimes, are all alleged to have been committed in furtherance of the conspiracy. As such, this evidence would also be admissible against each defendant in a separate trial. Additionally, defendants have failed to demonstrate how less drastic measures, such as limiting instructions, would not be sufficient to cure any possible spillover prejudice.[4] *See, e.g., United States v. Fernandez*, 559 F.3d 303, 317 (5th Cir. 2009) (limiting instruction that each charge against each defendant was to be considered separately was

---

[4] With respect to the RICO conspiracy, Flowers suggests that he "could not have participated in much of the over decade long crime spree alleged in the Indictment because he has been incarcerated in Ohio prisons . . . since mid-2011." (Doc. No. 207 at 4.) The government notes that Flowers was actually not incarcerated until 2013, and, in any event, it maintains that Flowers' argument is devoid of merit inasmuch as the indictment alleges that Flowers participated in one or more overt acts from prison. (*See, e.g.,* Doc. No. 1 ¶ 34.) Indeed, Flowers was later convicted for participating in gang-related violence associated with the overt act identified at paragraph 34 of the indictment.

21

sufficient to cure any possible prejudice from joint trial); *see also United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988) ("There is a strong policy in favor of joint trials when charges will be proved by the same series of acts . . . and there is a presumption that the jury will be able to sort out the evidence applicable to each defendant and render its verdict accordingly.") (internal citations omitted).

Flowers also raises a concern that his various co-defendants may offer antagonistic defenses that could prejudice him at trial, surmising that severance is necessary to avoid "potential irreconcilable conflicts[.]" (Doc. No. 207 at 5.) "Antagonistic defenses arise when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Harris*, 9 F.3d 493, 501 (6th Cir. 1993). The standard for severing based on potentially antagonistic defenses is "very high[.]" *United States v. Norwood*, 50 F. Supp. 3d 810, 827 (E.D. Mich. 2014). As the district court in *Norwood* observed:

> Hostility among defendants or the attempt of one defendant to save himself by inculpating another does not require that defendants be tried separately. Neither does a difference in trial strategies mandate separate trials. The burden is on defendants to show that an antagonistic defense would present a conflict so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.

*Norwood*, 50 F. Supp. 3d at 827 (quoting *Warner*, 971 F.2d at 1196). "In other words, 'mutually antagonistic defenses are not prejudicial *per se*,' and Fed. R. Crim. P. 14 does not require severance even if some prejudice is shown." *Id.* (quoting *United States v. Carpenter*, No. 12-20218, 2014 WL 943094, at *2 (E.D. Mich. Mar. 11, 2014) (further quotation marks and citation omitted)); *see Zafiro*, 506 U.S. at 539. "The 'mere fact that each defendant points the finger at his co-defendant is insufficient.'" *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014) (quoting *Warner*, 971 F.2d at 1196); *see United States v. Dhaliwal*, 464 F. App'x 498, 510 (6th

Cir. 2012) ("[T]he attempt of one defendant to save himself by inculpating another defendant does not require that the defendants be tried separately.") Instead, a defendant must show that the evidence at trial would be so confusing that "a jury could [not] reasonably be expected to sort out the evidence[.]" *United States v. Crotinger*, 928 F.2d 203, 206 (6th Cir. 1991).

Flowers fails to even identify what possible antagonistic defenses might be offered at trial, let alone demonstrate how any such arguably antagonistic defenses might confuse or mislead the jury, as required to obtain a severance. There is simply no reason to be believe that a jury, properly instructed, would be unable to sort out the evidence applicable to each defendant. *See, e.g., id.*, 928 F.2d at 206 (finding that "a jury could reasonably be expected to sort out the evidence applicable to whether [the passenger], [the driver], or someone else owned the suitcases containing the marijuana").

Both defendants also maintain that they may suffer substantial prejudice if they are not severed from their co-defendants because the introduction of any statements made by co-defendants, without the benefit of cross-examination, would violate the Sixth Amendment as set forth in *Bruton v. United States*, 391 U.S. 123, 132, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). (Doc. No. 203 at 3–4; Doc. No. 207 at 5–6.) The government insists that it is "aware of the boundaries of *Bruton* and will not submit testimony that would run afoul of its requirements." (Doc. No. 220 at 3.) Moreover, it is well settled that any potential *Bruton* violations can be avoided through redaction "by replacing the co-defendant's name with a neutral pronoun or other

generalized phrase."[5] *United States v. Winston*, 55 F. App'x 289, 294 (6th Cir. 2003) (citing, among authority, *Gray v. Maryland*, 523 U.S. 185, 118 S. Ct. 1151, 1140 L. Ed. 2d 294 (1998)). To the extent any such incriminating statements are not otherwise admissible under one or more exceptions to the hearsay rule, *see United States v. Patterson*, 713 F.3d 1237, 1247 (10th Cir. 2013) (holding statements made in furtherance of a conspiracy "present no Sixth Amendment problem"); *United States v. Alcantar*, 271 F.3d 731, 739 (8th Cir. 2001) (holding that "*Bruton* does not apply where the hearsay statement is otherwise admissible under Rule 801(d)(2)(E)"); *also Kendricks*, 623 F.2d at 1167 (rejecting defendant's argument *Bruton* prohibits the introduction of co-conspirator's statements), the Court finds that appropriate redaction will be sufficient to avoid an error under *Bruton*.

Given the obvious conveniences and economies to be gained from trying this complex conspiracy in one proceeding, and the lack of any reason to believe that a curative instruction will not be sufficient to protect against any spillover prejudice, the Court declines to exercise its discretion under Rule 14 to sever Flowers and Snell from their co-defendants. *See, e.g., United States v. Fernandez*, 559 F.3d 303, 317 (5th Cir. 2009) (limiting instruction that each charge

---

[5] Additionally, Flowers suggests that a severance would ease the risks associated with conducting trials during the current global health crisis associated with COVID-19. (Doc. No. 207 at 6–7.) At this time, there is no reason to believe that COVID-19 is a mitigating factor that favors severance. As the Chief Judge recently observed in her general order directing the Court to resume its normal trial practices, "the CDC now reports that with widespread population immunity due to vaccination, boosters, and prior COVID-19 infection, the overall risk of severe disease is now generally lower." (Amended General Order No. 2020-08.) Nevertheless, as it has done throughout the pandemic, the Court will continue to monitor the situation and reassess as necessary the health risks associated with going forward with a multi-defendant trial. If necessary and where appropriate, the Court will employ certain safety measures—such as masking and social distancing—designed to ensure that all participants and the public remain safe.

against each defendant was to be considered separately was sufficient to cure any possible prejudice from joint trial). The motions for severance are DENIED.

## IV. MOTIONS TO DISMISS

### A.     Dismissal on Double Jeopardy Grounds (Doc. No. 147)

Defendant Raphiel Patterson ("Patterson") seeks dismissal of Count One of the indictment and overt acts ¶¶ 17 and 30, arguing that "this prosecution is barred by U.S. Const. Amend V[.]" (Doc. No. 147 at 1.) Specifically, he posits that the prosecution of Count One in this Court, following his prosecution and conviction in state court, violates the Double Jeopardy Clause of the Fifth Amendment. The government opposes the motion. (Doc. No. 226.)

The Double Jeopardy Clause of the Fifth Amendment commands that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. It protects a criminal defendant from being tried twice for the same offense, *United States v. Dinitz*, 424 U.S. 600, 606, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976), and protects against the imposition of multiple punishments for the "same act or transaction [that] constitutes a violation of two distinct statutory provisions[.]" *Rutledge v. United States*, 517 U.S. 292, 297, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996) (citation omitted).

On December 11, 2012, the Stark County Grand Jury returned a "no bill" in a case against Patterson involving a drive-by shooting that occurred on August 26, 2012. (Doc. No. 147 at 3; Doc. No. 147-3 (Journal Entry).) On December 4, 2015, Patterson pled guilty to felonious assault with a firearm specification and participating in a criminal gang, having a weapon while under a disability, illegal possession of a firearm in a liquor permit premises, and carrying a concealed weapon, and was sentenced. (Doc. No. 147 at 2 (citing Stark County Court of

Common Pleas Case No. 2015 CR 1292).) There is no dispute that the overt act listed in ¶ 17 of the present indictment involves the same drive-by shooting that was the subject of the Stark County Grand Jury's no bill in 2012, and it is equally undisputed that the overt act listed in ¶ 30 references the same incident for which Patterson was prosecuted in 2015. Patterson argues that the inclusion of these overt acts in Count One runs afoul of the Double Jeopardy Clause.

Patterson's Double Jeopardy argument is foreclosed by the decision in *Gamble v. United States*, 139 S. Ct. 1960, 204 L. Ed. 2d 322 (2019), wherein the Supreme Court recognized the continuing viability of the "dual-sovereignty doctrine." *Id*. at 1964. The "dual-sovereignty doctrine" provides that "a crime under one sovereign's laws is not the 'same offense' as a crime under the laws of another sovereign[,]" even if the two sovereigns prosecute the individual for the same conduct. *Id*. at 1960. The dual-sovereignty doctrine is not an exception to the Double Jeopardy Clause, but, instead, flows directly from the text of the Fifth Amendment, which prohibits "'being twice put in jeopardy for the same *offense*, not the same *conduct or actions*.'" *Id*. at 1965 (emphasis in original) (quoting *Grady v. Corbin*, 495 U.S. 508, 529, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990) (Scalia, J., dissenting)). "[A]n 'offense' is defined by a law, and each law is defined by a sovereign. So where there are two sovereigns, there are two laws and two 'offenses.'" *Id*. Accordingly, the Supreme Court reasoned that the federal government's prosecution of an individual under a federal law after a state's prosecution for the same conduct under a state law does not violate that individual's Fifth Amendment rights. *See id*. at 1964–66; *see also Denezpi v. United States*, --U.S.--, 142 S. Ct. 1838 (June 13, 2022) (reaffirming viability of the dual-sovereignty doctrine) (citing, with favor, *Gamble*, 139 S. Ct. at 1965).

Notwithstanding the fact that the Supreme Court in *Gamble* merely reaffirmed 170 years of precedent, *see id*. at 1964, Patterson invites this Court to reject this precedent and side with two of *Gamble's* dissenters. (Doc. No. 147 at 4 (citing dissenting opinions of Ginsburg, J. and Gorsuch, J.).) However, this Court is bound by the United States Supreme Court and its mandates. *See, e.g., United States v. Ball*, 438 F. Supp. 3d 656, 659–60 (E.D. Va. 2020) (rejecting similar argument under *Gamble*), *aff'd*, 18 F.4th Cir. 445 (4th Cir. 2021). Thus, Patterson's prior state court charges did not involve the same offenses as the federal charge in Count One of the present indictment. Pursuant to the "dual-sovereignty" doctrine, Patterson's double jeopardy argument is without merit, and his motion to dismiss is DENIED.[6]

### B.    Dismissal for Violating Terms of Proffer (Doc. No. 233)

Defendant Austin Collins ("Collins") requests dismissal of the indictment on the ground that "the indictment violates the terms of the federal proffer ordered in the case *United States v. Austin Collins*, No. 5:20-CR-480." (Doc. No. 233 at 1.) The government opposes the motion. (Doc. No. 240.)

In a prior federal action, Collins was charged with one count of interference with commerce by means of robbery, in violation of 18 U.S.C. § 1951(a). (*See* N.D. Ohio No. 5:20-cr-480.) In connection with this prior action, on December 15, 2020, Collins provided information

---

[6] Even without application of the dual-sovereignty doctrine, Patterson would not be entitled to dismissal of Count One. As previously noted, under 18 U.S.C. § 1962(d), the government is not required to prove that Patterson committed *any* of the RICO predicate acts enumerated in the indictment. *See Salinas v. United States*, 522 U.S. 52, 63, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997); *Fowler*, 535 F.3d at 420. Accordingly, the mere fact that he was previously convicted of the substantive crimes identified as certain overt acts in the present indictment means that Patterson would be unable to satisfy either the "charging" or the "issue preclusion" components of the Double Jeopardy Clause. *See United States v. Felix*, 503 U.S. 378, 390–91, 112 S. Ct. 1377, 118 L. Ed. 2d 25 (1992) (the conspiracy to commit an offense and the offense itself are separate offenses for double jeopardy purposes); *see also United States v. Bayer*, 331 U.S. 532, 542, 67 S. Ct. 1394, 91 L. Ed. 1654 (1947) ("the same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses, for the agreement to do the act is distinct from the act itself").

regarding the charged robbery on June 22, 2020 and admitted involvement in three additional robberies. The information provided by Collins was reduced to writing, and the government also prepared a letter agreement setting forth the conditions of the proffer. (Doc. No. 233-1 (Narrative); Doc. No. 233-2 (Proffer Agreement).) The government and Collins eventually entered into a plea agreement in Case No. 5:20-cr-480. (Case No. 5:20-cr-480, Doc. No. 21 (Plea Agreement).) An addendum to the plea agreement provided that Collins would receive credit for substantial assistance to the government under U.S.S.G. § 5K1.1. Collins ultimately elected not to provide assistance. On July 20, 2021, Collins pled guilty to the June 22, 2020 robbery. (*Id.*, Doc. No. 23 (Judgment).)

In the present motion, Collins complains that the government breached the terms of his proffer by using his testimony regarding the three additional three robberies to charge him with RICO conspiracy in the present case. (Doc. No. 233 at 4; *see* Doc. No. 1 ¶¶ 53, 54, 70.) Citing the language of the Proffer Agreement, Collins argues that the "only permissible uses of the information provided by Collins was for impeachment purposes, for derivative use, and to pursue any investigative leads suggested by the proffer. (*Id.* at 5 (citing Doc. No. 233-2 ¶¶ 4–5).) "By clearly restricting itself from using the information directly against" him, Collins argues that "the [g]overnment expressly precluded itself from levying additional charges using information gathered from the Proffer." (*Id.*) He insists that the government violated this restriction when it identified the three robberies as overt acts in Count One of the present indictment.

The government is permitted to extend immunity to a defendant in exchange for information or his cooperation in an investigation. Immunity can take different forms. Transactional immunity accords full immunity from prosecution for the offense to which the

testimony relates; use immunity and derivative use immunity accord limited immunity from the use of testimony and evidence derived therefore in a subsequent prosecution. *Kastigar v. United States*, 406 U.S. 441, 453, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972).

Additionally, immunity may be statutory or take some less regimented form. When a witness is granted statutory immunity, his testimony is compelled by court order. 18 U.S.C. § 6003. In order for a federal prosecutor to grant statutory immunity, "he must receive approval from both the United States Attorney in the relevant judicial district, and from a high-ranking official in the Justice Department; the immunity grant must also be approved by a federal district judge." *United States v. Turner*, 936 F.2d 221, 223 (6th Cir. 1991) (citing 18 U.S.C. § 6003)).

A prosecutor can bypass these statutory formalities and informally grant "pocket immunity." *Id*. The terms of such immunity may be conveyed orally or by means of a letter agreement. While certain protections are reserved for statutory immunity, due process still "requires the government to adhere to the terms of any immunity agreement it makes[,]" even if it has only granted informal or pocket immunity. *United States v. Fitch*, 964 F.2d 571, 576 (6th Cir. 1992) (citing *United States v. Pelletier*, 898 F.2d 297, 302 (2d Cir. 1990)). When a defendant is granted only informal or pocket immunity, "normal contract law and remedies govern any breach by prosecutors." *United States v. Mendizabal*, 214 F. App'x 496, 501 (6th Cir. 2006) (citing *Fitch*, 964 F.2d at 574; *Turner*, 936 F.2d at 224).

Because the proffer by Collins was neither compelled nor otherwise subject to a formal grant of statutory immunity, the immunity extended was pocket or informal immunity. Additionally, it is clear from the language of the Proffer Agreement that the immunity was also use and/or derivative use immunity as opposed to transactional immunity. (*See* Doc. No. 233-2 ¶

29

3 ("the proffer will not be used against your client by the government at any stage of any criminal proceeding"), ¶ 5 ("the government may (a) make derivative use of the proffer, and (b) pursue any investigative leads suggested by the proffer").) In other words, the proffer protected Collins against his testimony being used against him in any proceeding, it did not, however, protect Collins from being charged for any crimes described by him in the proffer, provided the charge was not secured by such testimony. Further, because informal or pocket immunity was extended, contract principles guide the Court's analysis.

Collins alleges that the government used his testimony to charge the three robberies as overt acts in the present indictment when Collins elected not to provide substantial assistance against his co-conspirators. He complains that the Proffer Agreement was not dependent on him providing substantial assistance and, therefore, the government's "use of the information gathered in the Proffer to levy charges against [him] after promising not use the information directly against him suggests fraudulent inducement." (Doc. No. 233 at 5.) The government responds by representing that it did not use Collins' proffer when it included the robberies as overt acts in Count One. Instead, it represents that it was aware of and possessed information regarding the other robberies before Collins gave his proffer. Accordingly, it argues that it did not violate the terms of the Proffer Agreement.

Under well-settled contract principles that govern any alleged breach of an informal immunity agreement, the Court will not require the government to come forward with affirmative evidence that it did not breach the Proffer Agreement until the one asserting the breach, namely Collins, comes forward with some evidence to suggest that the government has

breached the agreement.[7] *See generally In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (In a breach of contract claim, the plaintiff bears the burden of proving [1] the existence of a contract, [2] performance on the part of the plaintiff, [3] breach by the defendant, and [4] damages) (citation omitted). Collins has failed to make such a showing.

Because the Proffer Agreement did not prevent the government from prosecuting Collins for crimes identified in his proffer, provided it did not use his proffer testimony to do so, his motion to dismiss the indictment based on a breach of the Proffer Agreement cannot be sustained. Accordingly, Collins' motion to dismiss is DENIED.

### C.    Dismissal based on RICO Statute of Limitations (Doc. No. 212)

Flowers moves to dismiss Count One, charging a RICO conspiracy, on the basis that it is time-barred. Focusing on the identified overt acts that he is alleged to have committed—all occurring between July 7, 2011 and July 18, 2016—he argues that "the five-year statute of limitations under 18 U.S.C. § 3282 expired on August 11, 2016 [exactly five years before the indictment was filed], and all of the predicate acts Flowers is alleged to have committed occurred prior to August 11, 2016." (Doc. No. 212 at 1, 4 (citing Doc. No. 1 ¶¶ 11-14, 16, 34).)

Had Flowers been charged with substantive RICO, this argument might have carried the day. There is no dispute that 18 U.S.C. § 3282 supplies a five-year statute of limitations for crimes charging federal racketeering. However, unlike *substantive* RICO, which requires proof

---

[7] Had Collins been given statutory immunity, he would have been entitled to a *Katisgar* hearing, an evidentiary hearing at which the government is required to prove that it is not using a defendant's immunized testimony against him. *Mendizabal*, 214 F. App'x at 501. A defendant who is prosecuted after receiving pocket immunity is not entitled to a *Kastigar* hearing. *Id.*; *see also United States v. Warshak*, 631 F.3d 266, 294 (6th Cir. 2010) ("[B]ecause the documents were not the product of compelled testimony, a full *Kastigar* hearing was not required.") Collins has not requested a *Kastigar* hearing, nor has he suggested that he is entitled to one. In fact, the Proffer Agreement was written so as to make clear that he was not entitled to one. (*See* Doc. No. 233-2 ¶ 5 (noting that the derivative use provision was included "in order to eliminate the need for a *Kastigar* hearing at which the government would have to prove that the evidence it would introduce at trial or any related legal proceeding is not tainted by the proffer").

that a defendant committed "at least one predicate act within the five-year limitations period," RICO *conspiracy* "does not require the government to prove that *any* predicate act was actually committed at all." *Saadey*, 393 F.3d at 677. Instead, the RICO conspiracy statute makes it unlawful "to conspire to violate" any of the substantive RICO provisions. *Salinas v. United States*, 522 U.S. 52, 63, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997) (quoting 18 U.S.C. § 1962(d)). As such, RICO conspiracy prosecutions are not time-barred simply because there is an absence of proof of an overt act within the five-year limitations period. *Saadey*, 393 F.3d at 677–78; *see also Brown v. United States*, 261 F. App'x 865, 867 (6th Cir. 2008) (affirming conspiracy conviction despite lack of any overt acts committed within limitations period). Flowers' argument that he (or anyone else for that matter) did not commit any overt acts within the limitations period misses the mark.

Instead, "a RICO conspiracy offense is complete, thus commencing the running of the five-year statue of limitations, only when the purposes of the conspiracy have either been accomplished or abandoned." *United States v. Tocco*, 200 F.3d 401, 425 n.9 (6th Cir. 2000) (quotation marks and citations omitted). Therefore, the question of statutory timeliness hinges on whether the purposes of the conspiracy were accomplished, or Flowers withdrew from the conspiracy, more than five years before the government filed the indictment on August 11, 2021. *See Smith v. United States*, 568 U.S. 106, 107, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013); *see, e.g., Tocco*, 200 F.3d at 425 n.9 (Defendant "has not persuaded us that the purposes of the conspiracy had been accomplished more than five years before his continuing involvement was shown, nor has it been demonstrated that he abandoned the ongoing enterprise. Certainly, [defendant] has not shown an affirmative withdrawal.").

Flowers makes no arguments that the purposes of the conspiracy were completed or abandoned more than five years before the indictment was filed, instead focusing on his own alleged acts in furtherance thereof. In addition to the overt acts identified in paragraphs 11–14, 16, 34, he notes that the only other overt acts that mention his name—paragraphs 90, 97, and 99—contain no dates. Because he "has been locked up by the government since November 15, 2012," "beyond the reach of the five-year statute of limitations[,]" he insists that the photographs and events described in these remaining three paragraphs had to have occurred prior to his incarceration. (Doc. No. 212 at 4–5.) Again, the question is whether the purposes of the conspiracy have been achieved, not whether the purposes or affirmative acts of the individual members of the conspiracy have been completed. *See United States v. Makki*, 129 F. App'x 185, 191 (6th Cir. 2005) ("It is undisputed that a defendant-conspirator can remain liable for the acts of his co-conspirators through the end of the agreed-upon conspiracy, *even if the defendant has ceased affirmative acts in furtherance of the conspiracy*.") (emphasis added).

Moreover, the fact that Flowers was incarcerated at some point during the charged conspiracy, standing alone, "does not constitute withdrawal" from it. *United States v. Johnson*, 737 F.3d 522, 526 (8th Cir. 2013); *see Makki*, 129 F. App'x at 191 (holding that withdrawal requires an affirmative act, "even if the defendant is arrested or imprisoned"). Flowers has not argued, or come forward with any evidence in support, that he took affirmative steps to withdraw from the conspiracy, and it is the government's contention that at least one of the overt acts charged against Flowers occurred while he was in custody. (Doc. No. 222 at 3 (citing Doc. No. 1 ¶ 34).) Because conspirators can (and often do) continue to participate in conspiracies from prison, courts have consistently held that imprisonment alone will not satisfy a defendant's

burden of proving the affirmative defense of withdrawal. *United States v. Bowie*, 618 F.3d 802, 813 (8th Cir. 2010); *United States v. Zamuido-Orosco*, 405 F. App'x 83, 84–85 (8th Cir. 2010); *see United States v. Leslie*, 658 F.3d 140, 144 (2d Cir. 2011) (noting that "imprisonment did not, as a matter of law, constitute a withdrawal from the conspiracy"); *Brown v. United States*, 261 F. App'x 865, 866 (6th Cir. 2008) (It is "well-settled law that once a conspiracy is established . . . its members continue to be conspirators until there has been an *affirmative showing* that they have withdrawn.") (emphasis added); *United States v. Rogers*, 118 F.3d 466, 473–74 (6th Cir. 1997) (similar); *see also Smith*, 568 U.S. at 111–12 (Withdrawal from a conspiracy constitutes an affirmative defense, for which a defendant bears the burden of proof, even when the withdrawal claim intersects with a statute-of-limitations claim).

As charged, it is clear that the purposes of the RICO conspiracy continued well past April 16, 2016, and Flowers has not demonstrated that he abandoned the ongoing enterprise or affirmatively withdrew from it. Therefore, the Court cannot find as a matter of law that Count One is time-barred. Flowers' motion to dismiss on this basis is DENIED.

### V. MOTION TO STRIKE OVERT ACTS (DOC. NO. 230)

Alternatively, Flowers moves to strike certain overt acts identified in Count One of the indictment due to what he perceives as pre-indictment delay. (Doc. No. 230.) He argues that his "right to a fair trial has been prejudiced by the government's tactical decision to delay this [i]ndictment for almost nine years after many of the overt acts [he] is alleged to have committed." (*Id*. at 1.) Specifically, he seeks an order striking paragraphs 11, 12, 16, and 34 of the indictment. (*Id*.)

As an initial matter, the Court questions whether striking overt acts is an available remedy for a purported pre-indictment delay. Flowers cites no authority in support of his request, and the Court's research has failed to uncover any. In fact, such a remedy would be counter-intuitive inasmuch as the government is not required to prove the commission of any overt acts to secure a conviction for RICO conspiracy. *See Saadey*, 393 F.3d at 677. Rather, dismissal of the entire count is the appropriate remedy for pre-indictment delay. *See, e.g, United States v. Sadiki-Yisrael*, No. 1:16-cr-145, 2018 WL 5091914, at *11 (N.D. Ga. May 24, 2018) (noting that defendant "cities no authority for the proposition that striking or 'dismissing' an overt act is a remedy for a purported Speedy Trial violation, especially where, as here, the overt acts themselves are not elements of the charged offense") (citation omitted), *report and recommendation adopted by* 2018 WL 5085687 (N.D. Ga. Oct. 18, 2018). As such, the Court will consider whether Flowers has demonstrated the existence of unconstitutional pre-indictment delay and is entitled to dismissal of the indictment.

"Pre-indictment delay violates the Fifth Amendment's Due Process Clause only if the defendant can show (1) 'substantial prejudice to his right to a fair trial' and (2) 'that the delay was an intentional device by the government to gain a tactical advantage.'" *United States v. Thomas*, 404 F. App'x 958, 961 (6th Cir. 2010) (quoting *United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009)); *see United States v. Marion*, 404 U.S. 307, 324, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971) (setting forth test). The substantial prejudice standard "'is nearly insurmountable, especially because proof of actual prejudice is always speculative.'" *United States v. Montgomery*, 491 F. App'x 683, 691 (6th Cir. 2012) (quoting *United States v. Rogers*, 118 F.3d 466, 477 n.10 (6th Cir. 1997)). Showing intentional delay designed to gain a tactical advantage is

35

equally difficult to demonstrate as the Court may "neither impute[] nor presume[] an improper purpose," "instead [it] require[s] the defendant 'to demonstrate that the Government had no valid reason for delay.'" *Thomas*, 404 F. App'x at 961 (quoting *Schaffer*, 586 F.3d at 426). Failure to satisfy either prong of the analysis will doom a pre-indictment delay argument. *See Schaffer*, 586 F.3d at 424 (If the defendant cannot prove substantial prejudice, the government need not even address whether the delay was to gain a tactical advantage).

### A. Substantial Prejudice

Flowers argues that, because of the government's delay in bringing charges, he was unable to start his investigation into the overt acts alleged against him until almost five years had passed with respect to paragraph 34, and the passage of almost nine years with respect to the events alleged in paragraphs 11, 12, and 16. (Doc. No. 230 at 7.) He speculates that his "defense will be prejudiced when witnesses cannot recall the events of almost nine years ago[.]" (*Id.*) He also complains that certain evidence is no longer available. While he concedes that police incident reports regarding the events alleged in the overt acts at issue were produced in discovery, he notes that certain photographs, tape-recorded statements, and surveillance videos appear to be missing or unavailable due to the passage of time. (*Id.* at 6–7.) Citing 57 year-old case law from another jurisdiction, he notes that the passage of time precludes him from establishing the materiality of the faded memories and purportedly missing evidence. (*Id.* at 8; *see id.* at 5 (citing *Ross v. United States*, 349 F.2d 210, 215 (D.C. Cir. 1965)[8]).)

---

[8] Flowers concedes that the ruling in *Ross* was filed before the Supreme Court's decision in *Marion*, which set forth the standard for due process claims based on pre-indictment delay. (Doc. No. 230 at 5 n.2.)

But in the Sixth Circuit, a defendant cannot rely on the mere passage of time and speculation that it has caused actual and substantial prejudice to his defense. A defendant bears a "heavy burden to prove that pre-indictment delay caused" actual and substantial prejudice. *United States v. Wright*, 343 F.3d 849, 860 (6th Cir. 2003). "'Bare assertions, without supporting evidence, are not sufficient to demonstrate prejudice.'" *United States v. Montgomery*, 491 F. App'x 683, 691 (6th Cir. 2012) (quoting *United States v. Vaughn*, 444 F. App'x 875, 879 (6th Cir. 2011)); *see Schaffer*, 586 F.3d at 426 (actual prejudice must be proven and can never be presumed or satisfied by speculation in the context of a pre-indictment dismissal motion).

Here, Flowers' suspicion that pre-indictment delay will result in faded memories of unidentified witnesses falls well short of establishing substantial prejudice. A defendant cannot rely on the "possibility of prejudice" that accompanies any extended delay, including fears "that memories will dim, [that] witnesses [will] become inaccessible, and [that] evidence [will] be lost." *Marion*, 404 U.S. at 326. "[T]hese possibilities are not in themselves enough to demonstrate that [a defendant] cannot receive a fair trial[.]" *Id*.; *see Wright*, 343 F.3d at 860 ("loss of memory is an insufficient reason to establish prejudice"). Accordingly, Flowers' generalized allegations of faded memories fail to establish substantial prejudice.

Flowers also argues, however, that certain documentary evidence is no longer available. The government takes issue with some of Flowers' accusations of missing evidence.[9] But even

---

[9] For example, for the overt act described in ¶ 16, the government reports that all of the evidence is still available and in the custody of the Canton Police Department as it involved a homicide. As for the shooting described in overt act ¶ 34, the government points out that Flowers was not the shooter and that all the evidence from that event is also still available. And while the government concedes that the cruiser video from the event described in overt act ¶ 11 and the firearm recovered from the scene are no longer available, it notes that pictures, witnesses, lab reports and law enforcement reports all remain available. Similarly, for overt act ¶ 12, while there is no surveillance video, the government represents that all of the police reports are still available. (Doc. No. 250 at 2 n.1.)

assuming that some evidence has been lost due to the passage of time, this fact alone is insufficient to demonstrate prejudice. *See United States v. Corona-Verbera*, 509 F.3d 1105, 1113 (9th Cir. 2007) ("the mere absence of records is not enough to establish actual prejudice"). "There must be at least some showing that the records would have been exculpatory, and that they became lost as a result of delay." *United States v. Darden*, 346 F. Supp. 3d 1096, 1112–14 (M.D. Tenn. 2018) (citing *United States v. Carruth*, 699 F.2d 1017, 1019 (9th Cir. 1983)). Flowers has failed to show "that the evidence lost would be . . . material to [his] defense." *Vaughn*, 444 F. App'x at 879. He comes closest with respect to overt act ¶ 12, where he claims, without support, that the missing tape-recorded witness statements somehow are "not consistent with the surveillance video obtained by the police." (Doc. No. 230 at 6.) However, he fails to describe these inconsistencies or explain how evidence of them would have been favorable to his defense. Where, as here, a defendant fails to demonstrate that the destruction of evidence will substantially prejudice him, his due process claim fails. *See Vaughn*, 444 F. App'x at 879; *see also United States v. Couch*, 822 F. Supp. 457, 462 (S.D. Ohio 1993) (finding lost-evidence claim "speculative at best").

### B. Tactical Advantage

Flowers' pre-indictment delay argument fails for the additional reason that he has not shown that the government delayed in bringing charges to gain a tactical advantage over him. *Schaffer*, 586 F.3d at 425–26. He offers no support for this prong of the pre-indictment delay test and, instead, merely speculates that "[b]ecause of the apparent loss of witness testimony and other evidence it seems the reason for setting forth overt acts 11, 12, 16, and 34 in the [i]ndictment is for the [g]overnment to obtain a tactical advantage." (Doc. No. 230 at 7.) But the

Court "neither imputes nor presumes an improper purpose," instead requiring the defendant "to demonstrate that the Government had no valid reason for the delay." *Schaffer*, 586 F.3d at 426 (internal quotation marks omitted). Flowers has failed to meet his burden of proof.

Further, it is clear from the indictment that the government's investigation into this RICO conspiracy continued after the events described in the overt acts in paragraphs 11, 12, 16, and 34 occurred. Indeed, the indictment identifies more than fifty (50) overt acts allegedly occurring within three years of the filing of the indictment, with the final identified overt act occurring only one month before the indictment was filed. (*See* Doc. No. 1 ¶¶ 46–101.) It is well settled that "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might be somewhat prejudiced by the lapse of time." *United States v. Lovasco*, 431 U.S. 783, 796, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977) (explaining that "investigative delay is fundamentally unlike delay undertaken by the Government solely to gain tactical advantage over the accused") (quotation marks and citation omitted); *see also Rogers*, 118 F.3d at 476 (affirming denial of motion to dismiss where delay was the result of "development of a thorough and fair investigation and the complexity of the case"). Flowers has brought forth no evidence tending to show that any pre-indictment delay was due to anything other than investigative delay. He has, therefore, also failed to meet his "heavy burden" with respect to the second prong the due process test. *See generally Wright*, 343 F.3d at 860 (quotation omitted).

Additionally, Flowers seeks a hearing in connection with this motion to "develop the record." (Doc. No. 230 at 1.) He does not elaborate on what this would entail, nor explain how an evidentiary hearing would assist him in demonstrating substantial prejudice or pre-indictment delay. The Court finds that such a hearing is unnecessary given the speculative and conclusory

nature of Flowers' arguments—both as to substantial prejudice and intentional, bad-faith delay. *See United States v. Schafer*, 384 F. Supp. 480, 483 (N.D. Ohio 1974) (denying evidentiary hearing where defendants failed to support their motion to dismiss with specific allegations of actual prejudice).

Because Flowers has demonstrated neither actual and substantial prejudice nor the government's intent to tactically delay, any pre-indictment delay here does not violate the Fifth Amendment. Flowers' motion to strike is DENIED.

## VI. CONCLUSION

For the foregoing reasons, the Court:

GRANTS IN PART the motion for disclosure of Rule 404(b) evidence (Doc. No. 208);

DENIES WITHOUT PREJUDICE the motions for additional preemptory challenges (Doc. No. 209) and for daily transcripts (Doc. No. 211); and

DENIES the motions set forth at Doc. Nos. 147, 203, 207, 210, 212–13, 221–22, 230, and 233.

**IT IS SO ORDERED**.

Dated: June 30, 2022

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**